IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Demetrius L. Green, ) | Civil Action No.: 8:16-cv-00126-DCN-JDA |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **REPORT AND RECOMMENDATION** |
| ) | **OF MAGISTRATE JUDGE** |
| Ms. Capers, Jail Administrator; Mr. ) | |
| Brooks,[1] Jail Guard; Ms. Elmore, Jail ) | |
| Guard, ) | |
| ) | |
| Defendants. ) | |

This matter is before the Court on Defendants' motion for summary judgment. [Doc. 59]. Plaintiff is proceeding pro se and brought this civil rights action pursuant to 42 U.S.C. § 1983. Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under 42 U.S.C. § 1983 and to submit findings and recommendations to the District Court.

Plaintiff filed this action on January 12, 2016,[2] alleging that Defendants were in violation of his constitutional rights under 42 U.S.C. § 1983. [Doc. 1.] On July 1, 2016, Defendants filed a motion for summary judgment. [Doc. 59.] On July 5, 2016, the Court issued an Order in accordance with *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975),

---

[1] Defendant Brooks is properly identified as Brooker and will be identified as such throughout this recommendation. [*See* Doc. 59-1 at 1.]

[2] A prisoner's pleading is considered filed at the moment it is delivered to prison authorities for forwarding to the court. *See Houston v. Lack*, 487 U.S. 266, 270 (1988). Accordingly, this action was filed on January 12, 2016. [Doc. 1-1 (Complaint received by prison mailroom on January 12, 2016).]

advising Plaintiff of the summary judgment/dismissal procedure and of the possible consequences if he failed to adequately respond to the motion.[3] [Doc. 60.] On September 29, 2016, Plaintiff filed a response in opposition to Defendants' motion. [Doc. 83.] On October 11, 2016, Defendants filed a reply. [Doc. 85.] On October 24, 2016, Plaintiff filed an "affidavit in opposition" to Defendants' reply, which the Court construes as a sur-reply. [Doc. 88.] Accordingly, the motion is ripe for review.

## **BACKGROUND**[4]

Liberally construed, Plaintiff alleges the following facts. At all times relevant to the factual allegations underlying this action, Plaintiff was housed at the Allendale County Detention Center ("ACDC").[5] [Doc. 1 ¶ 1.] Upon his arrival at ACDC in 2013, Defendant Capers decided that Plaintiff must be placed in the lock down unit because of the seriousness of the charges against him. [Doc. 1 ¶ 2.] Plaintiff contends this act violated the Constitution because Capers was discriminating against him because other detainees in the regular jail unit had similar or worse charges pending against them. [*Id.*]

On September 9, 2013, a detainee, Barry Grant ("Grant"), was also placed in the

---

[3]After being granted an extension of time to respond to Defendants' motion for summary judgment [Doc. 70], Plaintiff filed an interlocutory appeal in the Fourth Circuit Court of Appeals [Docs. 73, 75], challenging this Court's denial of Plaintiff's motions to amend the Complaint and to compel discovery. On September 15, 2016, the appeal was dismissed for lack of jurisdiction. [Docs. 82, 84.]

[4]The facts included in this background section are taken directly from Plaintiff's Complaint. [Doc. 1.]

[5]At the time Plaintiff filed the instant action, he was housed at Kershaw Correctional Institution. [Doc. 1 at 2.] Plaintiff has recently been transferred to Evans Correctional Institution. [Doc. 90.]

2

lock down unit, and Plaintiff completed a request form that he or Grant be moved because of the serious charges against Grant—shooting his sister and family. [*Id.* ¶ 3.] Plaintiff received no response, and he and Grant had a fight, resulting in Plaintiff needing medical attention for his eye and head. [*Id.* ¶ 4.] Then, Capers ordered that Plaintiff and Grant be separated within the lock down unit by cell doors being unlocked only at certain times; however, Capers did not move either detainee out of the lock down unit. [*Id.*] Plaintiff alleges that Defendants Elmore and Brooker had the duty to make sure Grant and Plaintiff were separated from each other. [*Id.*]

On November 5, 2013, Brooker and Elmore failed to keep Grant and Plaintiff separated; Plaintiff walked out of his cell, and Grant attacked him with a razor. [*Id.* ¶ 5.] Grant cut Plaintiff's head and eye badly. [*Id.* ¶ 7.] Plaintiff was rushed to a hospital for emergency and intensive care; he received fourteen stitches in his eye lids and seven painful shots in his eye for the tear duct surgery. [*Id.* ¶¶ 9–10.] Plaintiff's left eye is permanently damaged, and he cannot see clearly out of it. [*Id.* ¶ 12.]

Based on these facts, Plaintiff asserts that Defendants were deliberately indifferent and reckless by failing to keep him safe from violence at the hands of Grant and that Defendants knew Grant was not locked in his cell before Plaintiff came out of his cell. [*Id.*] Also, he alleges the decision to keep both detainees in the lock down unit was deliberately indifferent to his safety because he should have been in the regular jail population. [*Id.*] Plaintiff alleges that Capers violated his Fourteenth Amendment and Equal Protection rights by discriminating against him when she placed him in the lock down unit at ACDC, and that

Capers was "gross[ly] negligent" and in breach of duty. [*Id.*] Further, Plaintiff alleges that Defendants violated his Eighth Amendment rights by failing to ensure Grant was on lock down before releasing Plaintiff's door and allowing him to be attacked by Grant. [*Id.* ¶ 16.] Plaintiff also asserts these actions demonstrate gross negligence, contributory negligence, and breach of security and duty. [*Id.*] Finally, Plaintiff alleges that in failing to ensure that the inmates' doors were locked, Brooker violated his Eighth and Fourteenth Amendment rights, was negligent and discriminatory, and was in breach of security and duty. [*Id.* ¶ 17.] Plaintiff seeks declaratory relief, compensatory and punitive damages, and any other relief the Court deems just, proper, and equitable. [*Id.* at 6.]

## APPLICABLE LAW

**Liberal Construction of Pro Se Complaint**

Plaintiff brought this action pro se, which requires the Court to liberally construe his pleadings. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Pro se pleadings are held to a less stringent standard than those drafted by attorneys. *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Even under this less stringent standard, however, the pro se complaint is still subject to summary dismissal. The mandated liberal construction means only that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999). A court may not construct the plaintiff's legal arguments for him. *See Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

**Requirements for a Cause of Action Under § 1983**

This action is filed pursuant to 42 U.S.C. § 1983, which provides a private cause of action for constitutional violations by persons acting under color of state law. Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). Accordingly, a civil action under § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999).

Section 1983 provides, in relevant part,

> "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or any person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . ."

42 U.S.C. § 1983. To establish a claim under § 1983, a plaintiff must prove two elements: (1) that the defendant "deprived [the plaintiff] of a right secured by the Constitution and laws of the United States" and (2) that the defendant "deprived [the plaintiff] of this constitutional right under color of [State] statute, ordinance, regulation, custom, or usage." *Mentavlos v. Anderson*, 249 F.3d 301, 310 (4th Cir. 2001) (third alteration in original) (citation and internal quotation marks omitted).

The under-color-of-state-law element, which is equivalent to the "state action" requirement under the Fourteenth Amendment,

> reflects judicial recognition of the fact that most rights secured by the Constitution are protected only against infringement by governments. This fundamental limitation on the scope of constitutional guarantees preserves an area of individual freedom by limiting the reach of federal law and avoids imposing on the State, its agencies or officials, responsibility for conduct for which they cannot fairly be blamed."

*Id.* (quoting *Dowe v. Total Action Against Poverty in Roanoke Valley,* 145 F.3d 653, 658 (4th Cir. 1998)) (internal citations and quotation marks omitted). Nevertheless, "the deed of an ostensibly private organization or individual" may at times be treated "as if a State has caused it to be performed." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001). Specifically, "state action may be found if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" *Id.* (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)). State action requires both an alleged constitutional deprivation "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State . . . or by a person for whom the State is responsible" and that "the party charged with the deprivation [is] a person who may fairly be said to be a state actor." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). A determination of whether a private party's allegedly unconstitutional conduct is fairly attributable to the State requires the court to "begin[ ] by identifying 'the specific conduct of which the plaintiff complains.'" *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 51 (1999) (quoting *Blum* v. *Yaretsky*, 457 U.S. 991, 1004 (1982)).

**Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a).  A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant.  *Id.* at 257.  When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party.  *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings.  *Id.* at 324.  Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue.  *Id.*  Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion.  *Anderson*, 477 U.S. at 252.  Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion.  *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355,

365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> >
> > (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

## **DISCUSSION**

Plaintiff's Complaint can be divided into two distinct challenges to the conditions of his pretrial detention: (1) that Defendants discriminated against him by placing him in the lock down unit upon his arrival at ACDC; and (2) that Defendants failed to protect him from an attack by Grant.[6] Defendants argue that Plaintiff's Fourteenth Amendment claims are

---

[6]Plaintiff does not specifically assert a "failure to protect" claim. However, liberally construing the Complaint, the undersigned finds that Plaintiff has asserted such a claim. To the extent Plaintiff seeks to raise additional claims in his 260-page response and his

largely unintelligible; Plaintiff has failed to articulate a claim of discrimination; Plaintiff has failed to offer any evidence that he was treated unequally; Plaintiff fails to establish a prima facie Eighth Amendment claim; Defendants are entitled to qualified immunity; Plaintiff's claims against them in their official capacities are barred by the Eleventh Amendment; Plaintiff has failed to exhaust administrative remedies; Plaintiff's negligence claims fail because Plaintiff has failed to identify a specific duty owed to him by Defendants; and Plaintiff's negligence claims are barred by the South Carolina Tort Claims Act ("SCTCA"). [Doc. 59-1.] For the reasons discussed below, the undersigned recommends that Defendants' motion for summary judgment be granted.

**Exhaustion of Administrative Remedies**

The Court first addresses Defendants' argument that they are entitled to summary judgment on all claims because Plaintiff failed to exhaust his administrative remedies on these claims. [Doc. 59-1 at 17–18.] Plaintiff states that he "did exhaust his administrative remedies on what he could, the Defendants however went into the Plaintiff's room and got rid of the plaintiff paper work to hide the 11-22-13 incident." [Doc. 83 at 4.] Defendants contend that Plaintiff did not file a single grievance from February 13, 2013, through his transfer into the custody of Richland County. [Doc. 59-1 at 17.] However, Defendants have failed to provide an affidavit from a records custodian at ACDC, or any other evidence, to show that Plaintiff failed to exhaust his claims. [*See, e.g.*, Doc. 59-4.] Consequently, the undersigned cannot recommend granting summary judgment on this ground.

---

120-page sur-reply, the undersigned declines to consider additional claims not set forth in the Complaint.

**Eleventh Amendment Immunity**

The Eleventh Amendment prohibits federal courts from entertaining an action against a state. *See, e.g., Alabama v. Pugh*, 438 U.S. 781, 782 (1978) (per curiam) (citations omitted); *Hans v. Louisiana*, 134 U.S. 1, 10–11 (1890). Further, Eleventh Amendment immunity "extends to 'arm[s] of the State,' including state agencies and state officers acting in their official capacity," *Cromer v. Brown*, 88 F.3d 1315, 1332 (4th Cir. 1996) (alteration in original) (internal citations omitted), because "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office . . . [and] is no different from a suit against the State itself," *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (internal citation omitted). Therefore, Eleventh Amendment immunity protects state agencies and state officials sued in their official capacities from liability for monetary damages under 42 U.S.C. § 1983. *Id*. As a result, to the extent Plaintiff has alleged claims against Defendants in their official capacities, those claims must be dismissed because Defendants are entitled to immunity pursuant to the Eleventh Amendment.

**Discrimination Claims**

Plaintiff claims that Capers discriminated against him and violated his equal protection rights by placing Plaintiff in the lock down unit upon his arrival at ACDC. [Doc. 1 ¶¶ 2, 15.] Plaintiff alleges that "Defendants attempts to have the Plaintiff's discrimination claim dismissed should be barred as a[n] infection of their ideological attempt to escape consequences for acts they committed acting under color of state law." [Doc. 83 at 3.] To support his claim, Plaintiff attaches a declaration from Marquis Breeland ("Breeland") and an affidavit from Katlin Taylor ("Taylor"), indicating that while housed at ACDC on murder

charges, they were housed in the medium security section of the facility.[7] [Doc. 83-6 at 2–3.]

"The Equal Protection Clause generally requires the government to treat similarly situated people alike." *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). To show an equal protection violation in a prison setting, a plaintiff must demonstrate that he was treated differently from similarly situated inmates, that the discrimination was intentional or purposeful, and that the disparity cannot be justified by any valid prison or security interest. *See Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001).

According to Classification Plan, Policy Number 1081, inmate classification at ACDC is based on the following ten factors:

> I. Charge presently being held on
> II. Prior criminal record
> III. Other pending court actions
> IV. Escape risk
> V. Dependency problems
> VI. Residence
> VII. Living Arrangements
> VIII. Extent of Education
> IX. Employment
> X. Age

[Doc. 59-3 at 2.] ACDC inmates are placed in maximum, medium, or minimum security based on these factors. [*Id.*] Capers avers that, in accordance with Policy Number 1081, Plaintiff was placed into the "Max" portion, or the maximum security section, of the facility on his arrival at ACDC based on the seriousness of Plaintiff's charges—attempted murder

---

[7]The undersigned notes that these materials do not comply with the requirements of Fed. R. Civ. P. Rule 56(c)(4) because the Taylor affidavit is not signed and neither document is notarized.

11

and possession of a firearm during the commission of a violent crime—and due to his behavior during previous periods of incarceration. [Doc. 59-4 ¶¶ 2, 4.] Capers avers that because there was "bad blood" between Plaintiff and several other inmates housed in the medium security section, placing Plaintiff in the medium security section would have resulted in disruption and fighting. [*Id.* ¶ 6.] Further, Capers avers that being assigned to the Max unit at ACDC is not a "punishment" measure and absent additional restrictions or sanctions, inmates in the Max section eat the same food, are given the same recreation time, and have access to the same facilities, as inmates in the rest of the facility. [*Id.* ¶ 8.] The Max unit serves a safety purpose. [*Id.*]

The undersigned finds that Plaintiff's conclusory allegations, without more, are insufficient to preclude the granting of summary judgment. *See Ross*, 759 F.2d at 365. Plaintiff has not established that he was treated differently from similarly situated inmates. Plaintiff arrived at ACDC in February 2013 and, as stated, was placed in the maximum security (or Max) section. Capers avers that "during the time [Plaintiff] was in the custody of ACDC all inmates who were charged with offenses of comparable seriousness to [Plaintiff] were likewise confined in the Max section." [Doc. 59-4 ¶ 5.] Plaintiff identifies two specific inmates he claims were similarly situated and whom he alleges ACDC officials treated differently. However, the affidavit from Taylor is not signed and fails to include any dates [Docs. 83-6 at 3], and the declaration from Breeland confirms that he, like Plaintiff, was placed in maximum security upon his arrival at ACDC [Doc. 83-6 at 2]. These materials fail to demonstrate that Defendants treated Plaintiff differently from other inmates with whom he was similarly situated.

Further, Plaintiff makes no allegations that his treatment was the result of intentional

12

or purposeful discrimination. Plaintiff fails to set forth any specific, non-conclusory factual allegations which establish improper motive. *See Williams v. Hansen*, 326 F.3d 569, 584 (4th Cir. 2003) (A plaintiff must set forth "specific, non-conclusory factual allegations that establish improper motive"). Additionally, Plaintiff has failed to show that his security classification cannot be justified by a valid prison or security interest. As cited above, Capers sets forth legitimate safety reasons for housing Plaintiff in Max initially and for refusing Plaintiff's request for reassignment to the medium security section of ACDC [Doc. 59-4 ¶¶ 4, 6]; a decision that is bolstered by Plaintiff's incident report record [Doc. 59-5]. Accordingly, the undersigned recommends that summary judgment be granted on Plaintiff's discrimination claims.

**Failure to Protect Claims**

Next, Plaintiff asserts that Defendants violated his Eighth and Fourteenth Amendment rights when they failed to protect him from the attack by Grant.

### *Claims against Capers*

As an initial matter, to the extent Plaintiff bases his claims against Capers on the theory of supervisory liability, his claims are without merit. Because the doctrine of respondeat superior does not apply to § 1983 claims, *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691–94 (1978), a defendant is liable in her individual capacity only for her personal wrongdoing or supervisory actions that violated constitutional norms, *see Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (setting forth elements necessary to establish supervisory liability under § 1983).[8] A plaintiff must establish three elements to

---

[8]Such liability "is not premised upon respondeat superior but upon 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a

prevail under § 1983 on a theory of supervisory liability:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices[ ]"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.[9]

*Id.* (citations omitted) (footnote added).

Here, Plaintiff has failed to establish a § 1983 claim against Capers based on a theory of supervisory liability because Plaintiff has failed to establish that Capers had actual or constructive knowledge of subordinates engaging in conduct that posed a pervasive or

---

causative factor in the constitutional injuries they inflict on those committed to their care.'" *Shaw*, 13 F.3d at 798 (quoting *Slakan v. Porter*, 737 F.2d 368, 372–73 (4th Cir. 1984)).

[9] Stated differently,

> "[A]bsent an allegation that a named defendant has personally subjected the plaintiff to a deprivation of his constitutional rights or has caused the conduct complained of or participated in some manner in the allegedly unlawful actions of his employee or subordinate officer, this Court has held a complaint insufficient to state a claim against such defendant under § 1983."

*Thompson v. McCoy*, 425 F.Supp. 407, 411 (D.S.C.1976) (quoting *Knipp v. Weikle*, 405 F.Supp. 782 (N.D.Ohio 1975)). A plaintiff's burden to establish a claim based on supervisory liability is a heavy one; in fact, the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), may have entirely abrogated supervisory liability in *Bivens* actions. *See Ashcroft*, 556 U.S. at 693 (Souter, J., dissenting) ("Lest there be any mistake, . . . the majority is not narrowing the scope of supervisory liability; it is eliminating *Bivens* supervisory liability entirely. The nature of a supervisory liability theory is that the supervisor may be liable, under certain conditions, for the wrongdoing of his subordinates, and it is this very principle that the majority rejects."); *see also Jones v. Corr. Care Solutions*, No. 0:09-cv-269, 2010 WL 2639788, at *2 (D.S.C. June 7, 2010). A *Bivens* action "is the 'federal analog to suits brought against state officials under . . . § 1983.'" *Id.* at 1948 (quoting *Hartman v. Moore*, 547 U.S. 250, 254 (2006)). Therefore, the Supreme Court's reasoning may extend to abrogate supervisory liability in § 1983 actions as well as *Bivens* actions.

14

widespread risk of injury to Plaintiff. Rather, Plaintiff's claim is based on an isolated incident, which is insufficient to establish supervisory liability. *See Anderson v. Davies*, No. 3:10-2481-CMC-JRM, 2012 WL 1038663, at *2 (D.S.C. Mar. 8, 2012) ("'A pervasive risk of harm (under this principle) may not ordinarily be shown by pointing to a single incident or isolated incidents,' nor is a '(s)howing that individual officers violated a person's constitutional rights on an isolated occasion . . . sufficient to raise an issue of fact whether adequate training and procedures were provided.'" (alterations in original) (internal citations omitted)). Here, there is no evidence in the record of "documented widespread abuses," which are necessary to state a supervisory liability claim. Therefore, Capers is entitled to summary judgment on any claims brought against her under a theory of supervisory liability.

### *Claims against Brooker and Elmore*

"A failure-to-protect claim brought by a pretrial detainee constitutes a due process claim under the Fourteenth Amendment, but the same standards apply as for an Eight Amendment claim brought by a convicted prisoner." *King-Fields v. Leggett*, No. ELH-11-1491, 2014 WL 694969, at *10 (D. Md. Feb. 19, 2014); *see Brown v. Harris*, 240 F.3d 383, 388 (4th Cir. 2001). In *Farmer v. Brennan*, the Supreme Court recognized that "prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." 511 U.S. 825, 833 (1994) (quoting *Cortes-Quinones v. Jimenez-Nettleship*, 842 F.2d 556, 558 (1st Cir. 1998)). Such violence is not appropriately characterized as punishment and "[b]eing violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offenses against society.'" *Id.* at 834 (quoting *Rhodes v. Chapman*, 452 U.S.

337, 347 (1981)); *see also Odom v. S.C. Dep't of Corrs.*, 349 F.3d 765, 770 (4th Cir. 2003) ("[G]ratuitously allowing the beating . . . of one prisoner by another serves no legitimate penological objective, any more than it squares with evolving standards of decency." (alteration in original) (quoting *Farmer*, 511 U.S. at 833)). As stated, the Eighth Amendment imposes a duty on prison officials to protect prisoners from violence at the hands of other prisoners; however, "[n]ot every injury suffered by a prisoner at the hands of another establishes liability against a prison official . . . " *Brown v. N.C. Dep't of Corrs.*, 612 F.3d 720, 723 (4th Cir. 2010).

To establish a failure to protect claim, a prisoner must make two showings: first, that he suffered significant injury or was "incarcerated under conditions posing a substantial risk of serious harm"; and second, that the prison official at issue had a "sufficiently culpable state of mind." *Makdessi v. Fields*, 789 F.3d 126, 133 (4th Cir. 2015) (quoting *Farmer*, 511 U.S. at 834). Under the first prong, the objective inquiry, "a prisoner must allege a serious or significant physical or emotional injury resulting from the challenged conditions, or demonstrate a substantial risk of such serious harm resulting from the prisoner's exposure to the challenged conditions." *De'Lonta v. Angelone,* 330 F.3d 630, 634 (4th Cir. 2003) (internal citations omitted). The second showing is subjective and requires proof of deliberate indifference. *See Toomer v. Baltimore City Det. Ctr.*, No. DKC 12-0083, 2014 WL 4678712, at *3 (D. Md. Sept. 18, 2014) ("In order to prevail on a claim of failure to protect from violence, [a plaintiff] must establish that [the defendants] exhibited deliberate or callous indifference to a specific known risk of harm." (citing *Pressly v. Hutto*, 816 F.2d 977, 979 (4th Cir. 1987)). Ultimately, "the test is whether the [prison officials] know the plaintiff inmate faces a serious danger to his safety and they could avert the danger easily

yet they fail to do so." *Brown*, 612 F.3d at 723 (quoting *Case v. Ahitow*, 301 F.3d 605, 607 (7th Cir. 2002)).

The undersigned finds that the evidence presented by Plaintiff is insufficient to raise genuine issues of material fact regarding his claims against Elmore and Brooker. It is undisputed that on November 22, 2013, Plaintiff and Grant were scheduled to be released for their one-hour exercise period separately. Capers avers that on November 22, 2013, Grant re-entered his cell before Plaintiff was released; however, unbeknownst to the staff, Grant was in possession of a plastic fork and placed the fork into the bolt hole in his cell door. [Doc. 59-4 ¶ 12.] Further, Capers avers that when Grant reentered his cell after his exercise period, he pulled and held the door shut tightly, thus causing the magnetic sensors to indicate that the door was fully closed. [*Id.*] Capers avers that when Plaintiff was released, Grant emerged from his cell, and the two began to fight. [*Id.* ¶ 13.] Staff responded immediately, but by the time the inmates were separated, Plaintiff had received a laceration to his left eye. [*Id.*] The evidence in this case does not support a finding that jail officials were aware of but did not appropriately respond to a substantial risk that Plaintiff might be assaulted. In light of the facts presented, the undersigned recommends granting summary judgment because Plaintiff cannot demonstrate that the officers knew of the serious risk to Plaintiff's safety and could have averted the danger easily, yet failed to do so. *See Brown*, 612 F.3d at 723.

What is more, negligent failure by a prison official to protect an inmate from an attack by another inmate does not rise to the level of a violation of the Eighth Amendment. *See Pressly*, 816 F.2d at 979 (citing *Davidson v. Cannon*, 474 U.S. 344 (1986)). To the extent Plaintiff asserts that Defendants were "gross negligent" and "contributory negligent"

17

and in breach of duty and security, his claims must fail. Negligence is not the standard for liability for a constitutional claim being asserted under § 1983. Rather, as described above the standard is one of deliberate indifference. *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999) ("Deliberate indifference is a very high standard—a showing of mere negligence will not meet it."); *A.P. ex rel. Bazerman v. Feaver*, No. 04-15645, 2008 WL 3870697 at *12 (11th Cir. Aug. 21, 2008) ("[D]eliberate indifference requires a much higher standard of fault than mere or even gross negligence. . . ."). Based on the record before this Court, the evidence is insufficient to create a genuine issue of material fact that Defendants were deliberately indifferent to Plaintiff's harm. Accordingly, summary judgment should be granted on Plaintiff's failure to protect claims.[10]

**Qualified Immunity**

Defendants also argue they are entitled to qualified immunity on Plaintiff's Eighth Amendment claims. [Doc. 59-1 at 16–19.] The Court agrees.

Qualified immunity protects government officials performing discretionary functions from civil damage suits as long as the conduct in question does not "violate clearly established rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Thus, qualified immunity does not protect an official who violates a constitutional or statutory right of a plaintiff that was clearly established at the time of the alleged violation such that an objectively reasonable official in the official's position would have known of the right. *Id*. Further, qualified immunity is "an immunity

---

[10] The undersigned declines to address Defendants' assertions that Plaintiff's negligence claims may be dismissed under the SCTCA because Plaintiff fails to raise any state law claims in his Complaint. [*See* Doc. 1.]

18

from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

To determine whether qualified immunity applies, a court must determine "'whether the plaintiff has alleged the deprivation of an actual constitutional right at all[ ] and . . . whether that right was clearly established at the time of the alleged violation.'" *Wilson v. Layne*, 526 U.S. 603, 609 (1999) (quoting *Conn v. Gabbert*, 526 U.S. 286, 290(1999)). "[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action[,] assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Anderson v. Creighton*, 483 U.S. 635, 639 (1987) (citing *Harlow*, 457 U.S. at 819). For purposes of this analysis, a right is "clearly established" if "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* at 640.

District court and court of appeals judges are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). If a court decides in the negative the first prong it considers—i.e., the court decides the plaintiff has not alleged the deprivation of an actual constitutional right or the right was not clearly established at the time of the alleged violation—the court need not consider the other prong of the qualified immunity analysis. *See id.* at 243–45; *Torchinsky v. Siwinski*, 942 F.2d 257, 260 (4th Cir. 1991) (holding the court "need not formally resolve" the constitutional question of "whether the [plaintiffs] were arrested without probable cause" to address the plaintiffs' § 1983 claim; the court stated

that it "need only determine whether [the defendant]—a deputy sheriff performing within the normal course of his employment—acted with the objective reasonableness necessary to entitle him to qualified immunity"). As discussed above, Plaintiff's allegations fail to demonstrate Defendants violated Plaintiff's constitutional rights. Therefore, Defendants are entitled to qualified immunity.

## RECOMMENDATION

Wherefore, based upon the foregoing, the Court recommends that Defendants' motion for summary judgment [Doc. 59] be GRANTED.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin<br>United States Magistrate Judge

January 19, 2017
Greenville, South Carolina