# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| DEMETRIUS L. GREEN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 8:16-cv-00126-DCN |
| vs. ) | |
| ) | **ORDER** |
| MS. CAPERS, Jail Administrator; ) | |
| MR. BROOKS, Jail Guard; and ) | |
| MS. ELMORE, Jail Guard, ) | |
| ) | |
| Defendants. ) | |
| ) | |

This matter is before the court on Magistrate Judge Jacquelyn D. Austin's Report and Recommendation ("R&R") that this court grant defendants' Ms. Capers ("Capers"), Mr. Brooks ("Brooker"),[1] and Ms. Elmore's ("Elmore," together with Capers and Brooks, "defendants") motion for summary judgment. Plaintiff Demetrius L. Green ("Green") filed a written objection to the R&R. For the reasons set forth below, the court adopts in part and rejects in part the R&R, and grants in part and denies in part defendants' motion for summary judgment.

## I.  BACKGROUND[2]

At all times relevant to the factual allegations underlying this action, Green was housed at the Allendale County Detention Center ("ACDC"). Upon his arrival at

---

[1] Defendant Brooks's name is actually Brooker. The court follows the magistrate judge's practice of referring to the defendant's actual name, rather than the name identified in the caption of this case.

[2] Except as otherwise noted, the following facts are drawn from the R&R's background section.

1

ACDC in 2013, Green alleges he was placed in "the lock down unit"[3] because of the seriousness of the charges against him—attempted murder and possession of a firearm during a violent crime. Green contends that his placement in the lock down unit was discriminatory because other detainees were placed in the regular jail population, despite facing similar or worse charges.

On September 9, 2013, detainee Barry Grant ("Grant") was placed in the lock down unit. Green requested that he or Grant be moved because of the seriousness of the charges against Grant. Green's request received no response, and on September 14, 2013, he and Grant engaged in a fight. ECF No. 59-4. In response to this fight, Capers ordered Green and Grant to be kept apart, but Capers did not move either detainee out of the lock down unit.

On November 5, 2013, Brooker and Elmore failed to keep Grant and Green separated; Green walked out of his cell, and Grant attacked him with a razor. Green suffered serious injuries to his head and eye, and was rushed to the hospital for treatment. Green's injuries eventually required surgery, and his left eye is now permanently damaged. Green alleges that defendants were deliberately indifferent and reckless in failing to keep him safe from Grant, arguing that defendants knew that Grant was not locked in his cell when they allowed Green to walk out of his own cell.

Green filed the instant action on January 13, 2016, alleging that Capers discriminated against Green in violation of the Fourteenth Amendment by initially assigning him to the lock down unit and later failing to move either him or Grant

---

[3] The court understands that "lock down" is a status, not a section of the facility. What Green refers to as the lock down unit is actually just the maximum security section of the facility. However, the court adopts Green's vernacular for ease of reference.

from the lock down unit. ECF No. 1 at 5. Green also alleges that defendants violated his Fourteenth Amendment rights, along with his Eighth Amendment right to be free from cruel or unusual punishment, by allowing him to leave his cell while they knew Grant was not secured. Id. Green seeks declaratory relief, as well as damages.

Defendants filed the instant motion for summary judgment on July 1, 2016. ECF No. 59. The court issued a Roseboro Order on July 5, 2016. ECF No. 60. Green filed a response to defendants' motion on September 29, 2016, ECF No. 83, and defendants filed a reply on October 11, 2016. ECF No. 85. Green then filed an "Affidavit in Opposition" on October 24, 2016, which the magistrate judge construed as a sur-reply. ECF No. 88. The magistrate judge issued her R&R on January 19, 2017, ECF No. 91, and Green filed his objections on March 13, 2017. ECF No. 97. Green also filed a motion to postpone this court's decision until he can provide the court with certain additional discovery.[4] ECF No. 96. At this point, the matter became ripe for the court's consideration. Nevertheless, defendants filed an untimely reply to Green's objections on March 27, 2017. ECF No. 99.

## II.  STANDARD

This court is charged with conducting a de novo review of any portion of the magistrate judge's report to which specific, written objections are made, and may accept, reject, or modify, in whole or in part, the recommendations contained in that report. 28 U.S.C. § 636(b)(1). The magistrate judge's recommendation does not carry presumptive weight, and it is the responsibility of this court to make a final

---

[4] Because the discovery Green seeks would only impact one of the two claims at issue in this case, and the court denies defendants' motion for summary judgment on this claim, the court sees no reason to wait on the requested discovery.

3

determination.  Mathews v. Weber, 423 U.S. 261, 270–71 (1976).  A party's failure to object may be treated as agreement with the conclusions of the magistrate judge.  See Thomas v. Arn, 474 U.S. 140, 150 (1985).

Green appears pro se in this case.  Federal district courts are charged with liberally construing complaints filed by pro se litigants to allow the development of a potentially meritorious case.  See Haines v. Kerner, 404 U.S. 519, 521 (1972).  The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a cognizable claim, nor does it mean the court can assume the existence of a genuine issue of material fact where none exists.  Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

Summary judgment shall be granted if the movant shows that there is no genuine dispute as to any issue of material fact and that it is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the ECF of summary judgment."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id.  At the summary judgment stage, the court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in his favor.  Id. at 255.

### III.   DISCUSSION

The magistrate judge read Green's complaint to allege two distinct claims under 42 U.S.C. § 1983:  (1) a discrimination claim, based on his placement in the

4

lock down unit; and (2) a failure-to-protect claim, based on defendants' deliberate indifference in allowing Grant to attack Green on November 5, 2013.[5] R&R at 8. The magistrate judge first recommended that the court reject defendants' contention that Green failed to exhaust his administrative remedies with respect to these claims, pointing out that defendants failed to provide an affidavit from a records custodian at ACDC, or any other evidence, to support this argument. Id. at 9. The court agrees with this recommendation, and adopts the magistrate judge's analysis on the matter.[6] The court next addresses the merits of Green's claims.

    A.    **Discrimination Claim**

Green claims that his assignment to the lock down unit was discriminatory because other inmates facing similar charges were assigned to the medium security unit. The magistrate judge determined that Green "fail[ed] to set forth any specific, non-conclusory factual allegations which establish improper motive," and "failed to

---

[5] Green lists a variety of state law concepts in his complaint—"contributory negligence, discrimination, . . . , breach of duty, and gross negligence." Compl. ¶ 17(Q). Defendants argued that any state law claims must be dismissed because they are barred by the South Carolina Tort Claims Act and because Green failed to identify any specific duty owed to him. ECF No. 59-1 at 18–20. The magistrate judge found that Green failed to plead any state law claims. R&R at 8 n.6. In his objections, Green agrees that his claims are for "discrimination and failure to protect." Pl.'s Objections 9 n.12. Therefore, this issue appears to be resolved. To the extent Green contends he has alleged any other claims, the court agrees with the magistrate judge's conclusion that Green has failed to plead such claims.

[6] Green seeks both monetary and declaratory relief. The R&R did not specifically discuss the application of the Eleventh Amendment to Green's request for declaratory relief, but the court finds that it nevertheless reached the correct result. "While the Eleventh Amendment bars any award of damages on plaintiff's official capacity claims, plaintiff may pursue injunctive and declaratory relief if he can establish 'a substantial likelihood of harm in the future.'" Christian v. Magill, No. 0:15-cv-03379-DCN, 2016 WL 4975020, at *7 (D.S.C. Sept. 19, 2016) (quoting Haggwood v. Magill, No. 5:15-cv-3271, 2016 WL 4149986, at *4 (D.S.C. Aug. 3, 2016)). Here, there is no indication that Green will face any risk of future harm from defendants, largely because Green is no longer being held at ACDC.

show that his security classification cannot be justified by a valid prison or security interest." Id. at 12.  The court agrees.

"The Equal Protection Clause generally requires the government to treat similarly situated people alike." City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 439 (1985).  To show an equal protection violation in a prison setting, a plaintiff must demonstrate that he was treated differently from similarly situated inmates, that the discrimination was intentional or purposeful, and that the disparity cannot be justified by any valid prison or security interest.  See Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001).

Capers has provided an affidavit stating that she rejected Green's request to transfer out of the lock down unit because his initial assignment was justified by "the seriousness of his charges, his prior history at ACDC, and [Capers's] knowledge of the population of the medium security section at the time."  ECF No. 59-3, Capers Aff. ¶ 6.  Specifically, Capers avers that she "knew there to be 'bad blood' between [] Green and several other inmates being housed in the medium security section." Id. The ACDC classification policy indicates that cell assignments will be based on factors such as "age, criminal sophistication, seriousness of offense, assaultive/non-assaultive behavior and medical conditions."  ECF No. 59-2.  Thus, even assuming other similarly-charged inmates were assigned to the medium security area, Green's discrimination claim would likely fail because the ACDC classification policy allows for other factors to be considered in the assignment process and Capers has stated that she relied on such factors.  Green protests that Capers has not provided evidence that he had any "bad blood" with other inmates at ACDC, Pl.'s Objections 24, but a sworn

6

affidavit, based on the affiant's personal knowledge, constitutes evidence at the summary judgment stage. Fed. R. Civ. P. 56. It is Green who has failed to provide any evidence to dispute Capers's explanation of his assignment.

Indeed, Green has failed to present sufficient evidence to support his central factual assertion—that other, similarly-charged inmates were housed in the medium security portion of the facility.[7] Green relies on an unsigned "affidavit" from "Kattin Taylor," which avers that Taylor and five other inmates facing attempted murder charges were housed in the "regular unit." ECF No. 97-1 at 26. Of course, an affidavit must be signed to be considered at the summary judgment stage. Bradley v. S.C. Dep't of Corr., No. 3:08-cv-2510, 2010 WL 883729, at *4 (D.S.C. Mar. 5, 2010) ("Such a statement, lacking any indicia that the purported affiant swore or declared the information to be true under penalty of perjury, is not properly considered by the court on a motion for summary judgment."), aff'd, 385 F. App'x 345 (4th Cir. 2010). Green also offers the declaration of Marquis Breeland ("Breeland"), who states that he was charged with "murder/murder and weapons/possession of a weapon during a

---

[7] Green's allegations were offered in a verified complaint. "[A] verified complaint is the equivalent of an opposing affidavit for summary judgment purposes, when the allegations contained therein are based on personal knowledge." Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991). Thus, it is not exactly true that Green failed to provide any evidence. However, the allegations in Green's complaint are insufficient to preclude summary judgment on the discrimination claim. For one thing, Green simply alleges that other inmates in the medium security section had similar or worse charges. Compl. ¶ 2(B). This allegation is too conclusory to create a genuine issue of material fact. Smith v. Beck, 2011 WL 65962, at *7 (M.D.N.C. Jan. 10, 2011) (finding that plaintiff's claim that he made several requests to get away from abusive supervisor too "self-serving" and "conclusory" to preclude summary judgment, noting there was no other evidence of the alleged requests) report and recommendation adopted, 2012 WL 1340766 (M.D.N.C. Apr. 18, 2012) aff'd, 577 F. App'x 196 (4th Cir. 2014).

7

violent crime,"[8] and that he, like Green, was initially assigned to the lock up unit at ACDC.  ECF No. 97-1 at 28.  Thus, Breeland's declaration indicates that Green's initial assignment was <u>not</u> discriminatory.  Breeland does state that he was eventually moved to the medium security section, which might suggest that Capers's decision to reject Green's transfer request was discriminatory.  But, as noted above, Capers's affidavit sufficiently explains her reasons for rejecting Green's transfer request.  Therefore, the court adopts the magistrate judge's recommendation and grants the defendants summary judgment on Green's intentional discrimination claim.

### B.     Failure-to-Protect Claims

The magistrate judge then addressed Green's failure-to-protect claims under the Eighth and Fourteenth Amendments.  R&R at 13–18.  The magistrate judge separately analyzed the failure-to-protect claim against Capers and the claims against Brooker and Elmore.  With respect to the claim against Capers, the magistrate judge recommended the court grant summary judgment because Green failed to present any evidence to support a theory of supervisory liability.[9]  The court has reviewed the R&R and Green's objections, and concludes that the magistrate's position is correct.  The court therefore adopts the R&R's analysis of this issue as its own.

However, the court has some concerns about plaintiff's failure-to-protect claims against Brooker and Elmore.  There does not appear to be any dispute about the proper legal standard by which these claims should be judged.  As the magistrate

---

[8] It is not exactly clear what Breeland's charges were, but the court accepts that they were at least as serious as Green's.

[9] The magistrate judge's focus on the supervisory liability issue implicitly recognizes that there is no plausible argument, much less evidence, that Capers was <u>directly</u> responsible for the November 5, 2013 fight between Green and Grant.

8

judge explained, "[a] failure-to-protect claim brought by a pretrial detainee constitutes a due process claim under the Fourteenth Amendment, but the same standards apply as for an Eighth Amendment claim brought by a convicted prisoner." Id. at 15 (quoting King-Fields v. Leggett, 2014 WL 694969, at *10 (D. Md. Feb. 19, 2014)).  Under the Eighth Amendment, "prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." Farmer v. Brennan, 511 U.S. 825, 833 (1994) (quoting Cortes-Quinones v. Jimenez-Nettleship, 842 F.2d 556, 558 (1st Cir. 1988)).  To establish a failure-to-protect claim, an inmate must first show "that he was 'incarcerated under conditions posing a substantial risk of serious harm.'" Makdessi v. Fields, 789 F.3d 126, 133 (4th Cir. 2015) (quoting Farmer, 511 U.S. at 834).  Next, the inmate must show that the defendant acted with "'deliberate indifference' to inmate health or safety." Id. (quoting Farmer, 511 U.S. at 834). Deliberate indifference requires "'more than mere negligence,' but 'less than acts or omissions [done] for the very purpose of causing harm or with knowledge that harm will result.'" Id. (alternation in original) (quoting Farmer, 511 U.S. at 835).  To establish deliberate indifference, "the evidence must show that the official in question subjectively recognized a substantial risk of harm," and subjectively recognized that his actions were 'inappropriate in light of that risk.'" Parrish ex rel. Lee v. Cleveland, 372 F.3d 294, 303 (4th Cir. 2004) (quoting Rich v. Bruce, 129 F.3d 336, 340 n. 2 (4th Cir.1997)).  Importantly, however, a prison official's subjective knowledge can be proven by circumstantial evidence, Makdessi, 789 F.3d at 133, and "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that a risk was obvious." Farmer, 511 U.S. at 842.

The court finds there are questions of fact regarding Brooker and Elmore's knowledge of the risk Green faced when they failed to secure Grant before allowing Green to leave his cell. The parties do not dispute that Capers ordered Grant and Green to be kept apart after their first fight on September 14, 2013. Capers Aff. ¶ 9. Nor is there any suggestion that Brooker and Elmore did not know Green was about to leave his cell—indeed, it appears that Elmore was the one who unlocked Green's cell from the control booth. ECF No. 97-1 at 18. Instead, the defendants' argument is that they did not realize that Grant's cell was unlocked because he had secretly placed an object into the bolt hole of his cell door—which prevented the door from actually locking—while he simultaneously held the door shut—which engaged the magnetic sensors in the doorjamb, causing the warning light to indicate that the door was locked. Id. ¶¶ 11, 12.

However, the court cannot accept Capers's account of the incident, primarily because it is not clear how Capers has personal knowledge of these events when she was not there. Rule 56(e) requires affidavits filed in support of a summary judgment motion to be "made on personal knowledge." Capers cannot claim personal knowledge of an incident simply because she is in charge of ACDC, or because the incident was reported to her. See Henslee v. FNU Singleton, 2015 WL 4920260, at *4 (W.D.N.C. Aug. 18, 2015) (granting in part a motion to strike prison administrator's affidavit, reasoning that the administrator's "statements as to what happened are not admissible because [he] simply was not there when the alleged

excessive force incident occurred").[10] Capers has otherwise failed to explain how she acquired personal knowledge of the incident. Therefore, the court must disregard Capers's affidavit, to the extent it discusses the events surrounding Grant's attack.

Defendants' remaining evidence is insufficient to support summary judgment. Brooker and Elmore did not offer any affidavits. However, their interrogatory answers touch on certain aspects of the incident. For instance, Brooker states that he was acting as backup to Officer Ricard Rollins ("Rollins"), who was performing security checks on the lock down unit. ECF No. 97-1 at 22. Elmore also mentions Rollins, stating that she relied on Rollins to tell her when Grant's cell was secure. Id. at 18. Elmore further states that she was in the control booth at the time of the incident, where she monitored the security of cell doors on the monitors. Id. at 17. This is roughly consistent with the account offered by plaintiff's verified complaint, which states that Brooker was checking the cell doors to see if they were locked and Elmore was controlling the locks from the control room. Compl. ¶¶ 16(P), 17(Q). Significantly, Brooker does not dispute Green's claim that the security check required the officers to push on the cell doors to make sure they were secure. ECF No. 97-1 at 22.

If Brooker was accompanying[11] Rollins on a security check, a reasonable juror could infer that Brooker would have realized that Grant's door was not secured—

---

[10] The same rationale applies to any discussion of the incident contained in Capers's interrogatory answers. Ambling Mgmt. Co. v. Univeristy View Partners, LLC, 581 F. Supp. 2d 706, 720 (D. Md. 2008) ("For interrogatory answers to be considered on summary judgment, they must satisfy the personal knowledge requirement of Federal Rule of Civil Procedure 56(e).").

11

either because he would have seen the door move when it was pushed, or he would have seen Grant holding the door closed. In fact, given that Capers's account of the incident must be disregarded, there is very little evidence to support defendants' claim that the magnetic sensors on Grant's door even engaged. Elmore does state that "all the information provided to [her] at the time indicated that [Grant's door] was secured," ECF No. 97-1 at 19, but this strikes the court as too conclusory an assertion to rely on at the summary judgment stage. Compl. ¶ 15(O).

Ultimately, the court finds that defendants have failed to show that they are entitled to summary judgment on the failure-to-protect claims against Brooker and Elmore. The only thing that is clear is that Grant's door was <u>not</u> locked. Capers's affidavit would have provided some valuable clarification of the remaining facts, if she had any personal knowledge of the incident. Left with Green's verified complaint, and Elmore and Brooker's somewhat evasive interrogatory responses, the court believes that a reasonable jury could reach a wide-range of findings—including that Elmore and Brooker knew that Grant was not secured in his cell. If Elmore and Brooker knew Grant was not locked in his cell, they also very likely knew that they should not let Green out of his cell based on Capers's orders that the two be kept apart due to their previous fight. Thus, the court concludes that there is a genuine issue of fact as to whether Elmore and Brooker acted with deliberate indifference.[12]

---

[11] To the extent acting as "backup" does not involve accompanying the officer who is actually performing the checks, the court believes it was incumbent on defendants to make that clear.

[12] The magistrate judge also found that Elmore and Brooker were entitled to qualified immunity. R&R at 18–20. Qualified immunity protects government officials performing discretionary functions from civil damage suits as long as the conduct in question does not "violate clearly established rights of which a reasonable

### C. Eleventh Amendment

The magistrate judge also recommended the court dismiss Green's claims to the extent they were brought against defendants in their official capacities. ECF No. 91 at 10. "The [E]leventh [A]mendment prohibits a federal court from entertaining an action for any kind of relief where the defendant is a state or a state agency." Gulledge v. Smart, 691 F. Supp. 947, 954 (D.S.C. 1988), aff'd, 878 F.2d 379 (4th Cir. 1989). This rule extends to actions against state officials acting in their official capacity. Id. However, defendants describe ACDC as a "county-operated facility." ECF No. 59-1 at 3 (emphasis added). Counties, unlike states, are not afforded sovereign immunity. N. Ins. Co. of N.Y. v. Chatham Cty., Ga., 547 U.S. 189, 193 (2006) ("[T]his Court has repeatedly refused to extend sovereign immunity to counties."). The court notes that other "county" detention centers in South Carolina have been held to be arms of the county sheriff's office, and in turn, county sheriffs—despite their title—have been found to be officers of the state. See Williams v. Dorchester Cty. Det. Ctr., 987 F. Supp. 2d 690, 695 (D.S.C. 2013) (applying this reasoning to find that director of Dorchester County Detention Center was immune from suit in federal court in his official capacity). The court suspects that ACDC is

---

person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Because the magistrate judge found no evidence that Elmore and Brooker violated Green's constitutional rights, she found it unnecessary to determine whether such rights were clearly established. R&R at 20. Because the court finds a genuine issue of fact as to whether Elmore and Brooker violated Green's rights, it is necessary to determine whether such rights were clearly established. The court has little trouble finding that they were, as the Supreme Court has long recognized that "prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." Farmer, 511 U.S. at 833 (quoting Cortes-Quinones, 842 F.2d at 558). Therefore, the court finds that Elmore and Brooker are not entitled to qualified immunity.

controlled by the Allendale County Sheriff's Office, but the court cannot grant summary judgment on a hunch. Therefore, the court finds there is a genuine issue of fact as to whether the defendants can be sued in their official capacity.[13]

### D.     Discovery Request

Green's objections argue that the defendants' description of the cell door's design is simply false. Green repeatedly claims that the magnetic sensors are not located in the doorjamb, but in the locking mechanism itself—meaning that if the door is prevented from locking, the magnetic sensors cannot touch and there is no way the warning light would signal that the cell is secured. Pl.'s Objections 28. Though Green's description sounds like a much better design for a prison door, he has failed to offer any evidence to support this argument. Green now requests an opportunity to conduct more discovery on the issue, ECF No. 96,[14] but the court's Roseboro order clearly explained that Green needed to present such evidence to the magistrate judge. ECF No. 60. Thus, under normal circumstances, the court would be disinclined to grant Green's request.

Here, however, the court is convinced that this case could benefit from further discovery. The court's analysis was significantly hindered by its inability to consider Capers's description of the incident. If defendants were able to provide affidavits from individuals who were actually involved in the incident, the result may well have

---

[13] Of course, this finding only affects Elmore and Brooker because the discrimination claim against Capers fails on the merits.

[14] Green's request was styled as a "motion for [an] extension of time" and "second request for production of documents." ECF No. 96. The court construes this as a belated Rule 56(d) response.

been different.[15]  Further discovery might also give the defendants an opportunity to confirm the court's suspicion that ACDC is controlled by the Allendale County Sheriff's office.  But if the court is going to allow defendants another bite at the apple, Green is entitled to the same opportunity—especially on an issue as important as the mechanics of the cell door.

    Therefore, the court will deny defendants' motion for summary judgment on Green's failure-to-protect claims against Elmore and Brooker.  The court will remand those claims to the magistrate judge, and the parties will be allowed to conduct further discovery.   When such discovery is complete, the parties will have another opportunity to file dispositive motions.

---

[15] This is by no means a guarantee.  The court was also troubled by the defendants' inability or failure to describe exactly what Elmore and Brooker were doing in the moments leading up to the incident and what information they had before them at the time.

## IV.   CONCLUSION

For the foregoing reasons, the court **ADOPTS** the R&R in part and **REJECTS** the R&R in part.  The court **GRANTS** defendants' motion for summary judgment with respect to Green's discrimination claims and the failure-to-protect claim against Capers.  The court **DENIES** defendants' motion for summary judgment with respect to Green's failure-to-protect claims against Elmore and Brooker, and **REMANDS** such claims to the magistrate judge, as set forth in greater detail above.

**AND IT IS SO ORDERED**.

                                            **DAVID C. NORTON**
                                            **UNITED STATES DISTRICT JUDGE**

**March 27, 2017**
**Charleston, South Carolina**